567 A.2d 719

**UNION NATIONAL BANK OF LITTLE ROCK, Assignee of Union Modern Mortgage Corporation, Assignee of Three Rivers Mortgage Corporation**

v.

**Darrell COBBS and Dian M. Cobbs.**

**Appeal of Darrell COBBS.**

Superior Court of Pennsylvania.

Argued Sept. 13, 1989.

Filed Dec. 18, 1989.

510

Daniel L. Haller, Aliquippa, for appellant.

Rodney Permigiani, Pittsburgh, for appellee.

Before ROWLEY, MELINSON and HOFFMAN, JJ.

ROWLEY, Judge:

This is an appeal by Darrell Cobbs[1] from a summary judgment in favor of appellee, Union National Bank of Little Rock (Bank), in a mortgage foreclosure action. The only issue raised on appeal is whether or not the Bank's failure to comply with the mortgage servicing provisions contained in the Lenders Handbook [VA Pamphlet 26–7

1. Although the instant mortgage foreclosure action was also brought against Dian Cobbs, the wife of Darrell Cobbs, the Cobbs were separated at the commencement of the action, and Dian Cobbs has not participated in any of the proceedings in this case.

(Revised)] can be raised as an equitable defense in a mortgage foreclosure action. We reverse the summary judgment and hold that such a failure may be asserted as an equitable defense.

The present action was commenced to foreclose a federally insured Veterans Administration (VA) mortgage which admittedly was in default. In new matter filed in response to the mortgage foreclosure complaint, appellant asserted that the Bank had commenced foreclosure proceedings without ascertaining the reason for the default, offering a forbearance plan, or recasting the mortgage. Appellant also asserted in new matter that a VA mortgagee who does not service a mortgage in accordance with the VA Lenders Handbook is barred on equitable grounds from foreclosing.

The trial court granted the Bank's motion for summary judgment on the basis that the Bank had no legally enforceable duty to comply with the VA Lenders Handbook. The trial court, however, did not address the issue, raised both in the trial court and in the instant appeal from the summary judgment, of whether despite the absence of a *legal* duty to comply with the VA Lenders Handbook's servicing provisions, the court may exercise its *equitable* powers and preclude the foreclosure of a mortgage where the servicing provisions have not been complied with.

Before proceeding to evaluate the merits of this appeal, we deem it necessary to emphasize the nature of the decision that we are called upon to review. In ruling upon a motion for summary judgment, "[i]t is not part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried." *Washington Federal Savings and Loan Association v. Stein*, 357 Pa.Super. 286, 288, 515 A.2d 980, 981 (1986). The court deciding the motion must examine the record in the light most favorable to the nonmoving party and must resolve any doubt against the moving party. *Id.*, 357 Pa.Superior Ct. at 288–89, 515 A.2d at 981. Only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" may summary judgment properly be granted. Pa.R.C.P. 1035(b), *quoted in Washington Federal v. Stein, supra.* In the present case, the trial court has concluded that there is no issue of fact to be tried. Whether that decision is correct is the question that we are asked to resolve.

Appellant contends that there remains a genuine issue of material fact: Has the Bank fulfilled its "equitable obligation" to service the mortgage? In an affidavit filed in response to the Bank's motion for summary judgment, appellant averred that in an attempt to discuss his mortgage problem, he called the 800 number provided by his lender and was told that the person with whom he was speaking would get back to him after talking to someone in the credit department, but that she never did; that he called the lender again and was told that he would be sent a questionnaire concerning his problem, but that he never received the questionnaire; and that no one from the mortgage company suggested a lower payment plan to help him until he found full-time employment. By thus failing to make itself aware of the reasons for and the extent of his financial problems, appellant asserts, the Bank violated the spirit and intent of the VA Lenders Handbook.

The servicing procedures that holders of VA-insured mortgages are expected to follow are described in the Lenders Handbook as follows:

> The VA does not prescribe in detail the manner in which loans should be serviced. However, holders are expected to follow or to require their servicing agents to follow accepted standards of loan servicing.... Good judgment must be exercised in each case, according to the particular facts and circumstances. In almost every case, this must be accomplished by direct contact (i.e., telephone conversation or personal visit) with the borrower, so that the reasons for the default can be discussed frankly and the possible alternatives for curing the default can be explored thoroughly.... [I]t is not expected that holders

will institute action to terminate loans until every reasonable effort has been made to arrive at some solution which would permit the borrower to retain his or her home.

VA Lenders Handbook, Part I, Section F.1.c. The Handbook further states that mortgage holders are encouraged "to extend all reasonable forbearance in the event a borrower becomes unable to meet the terms of a loan" (Part I, Section F.1.b), that mortgage holders are given "broad discretion in extending or recasting the terms of repayment in order to cure a default" (Part I, Section F.1.b), and that in hopeless situations, in order that "every effort ... be made to minimize the ultimate loss of all parties concerned," borrowers "should be urged to sell their property in order to realize any equity and to avoid termination of loans" (Part I, Section F.1.d). Appellant does not contend that the Bank has failed to satisfy the requirements of state law, and he concedes that the VA Lenders Handbook does not have the force and effect of law. Nevertheless, he contends that the Handbook creates an equitable obligation, not met in the present case, to service VA loans in the manner described therein.

Although an action of mortgage foreclosure is an action at law in Pennsylvania, equitable relief is nevertheless available in such an action if it can be granted consistently with principles of law. *Fleet Real Estate Funding Corp. v. Smith*, 366 Pa.Super. 116, 124 n. 3, 530 A.2d 919, 923 n. 3 (1987). The appellant in *Fleet*, who was admittedly in default on a mortgage insured by the Federal Housing Administration (FHA), contended on appeal that the trial court erred in entering summary judgment against her without considering the mortgage holder's alleged failure to service her mortgage in accordance with applicable regulations and guidelines issued by the Department of Housing and Urban Development (HUD). The guidelines were contained in HUD Handbook 4330.1 on Administration of Insured Home Mortgages. This Court, citing *Brown v. Lynn*, 385 F.Supp. 986 (N.D.Ill.1974) (*Brown I*), and *Brown v.*

*Lynn,* 392 F.Supp. 559 (N.D.Ill.1975) (*Brown II*), concluded that a mortgagee was not required by federal law to comply with the regulations and Handbook provisions before foreclosing on an FHA-insured mortgage. Nevertheless, this Court noted, the court in *Brown II,* concerned with "quick" foreclosures, had observed "that its decision did not limit state or federal foreclosure courts 'from exercising their equity powers by refusing to grant foreclosures where mortgagees have flagrantly disregarded the forbearance provisions of the HUD Handbook.'" *Fleet Real Estate v. Smith,* 366 Pa.Super. at 123, 530 A.2d at 923 (quoting *Brown II,* 392 F.Supp. at 562). This Court held, therefore, that a mortgagor could raise the mortgagee's deviation from compliance with the forbearance provisions of the HUD Handbook and regulations as an *equitable* defense to foreclosure. *Id.,* 366 Pa.Superior Ct. at 124, 530 A.2d at 923. Noting that appellant had submitted a "Declaration" stating that at no time since her default began had the mortgage company offered to help her prevent foreclosure, the Court concluded that since material facts concerning the mortgagee's servicing of the mortgage were in dispute, summary judgment was inappropriate. *Id.,* 366 Pa.Superior Ct. at 125 & n. 4, 530 A.2d at 924 & n. 4. In this appeal appellant contends that although *Fleet* involved an FHA-insured rather than a VA-insured mortgage, it did not otherwise differ from the present case in any material respect and its holding should therefore control the outcome of this appeal.

The Bank contends that the distinctions between VA and FHA mortgages are far more significant than appellant acknowledges. First, the protections granted by the Pennsylvania Homeowner's Emergency Assistance Act (Act 91), Act of December 23, 1983, P.L. 385, *as amended,* 35 P.S. §§ 1680.401c–1680.410c, to mortgagors who encounter temporary financial difficulties are available to persons having VA-insured mortgages but not to those having FHA-insured mortgages. This statutory distinction, in the Bank's view, argues against the extension of the *Fleet* holding to VA mortgagors, as they have already been afforded statutory

protection which renders reliance upon the provisions of the VA Lenders Handbook unnecessary. Second, the Bank argues that while the language of the VA regulations, as well as of the Lenders Handbook and the federal statute governing veterans' benefits, is clearly permissive with regard to servicing requirements, the comparable HUD regulations are in many respects mandatory. For that reason, the Bank contends, the holding in *Fleet* should not be extended to the present case. Because the provisions of the Lenders Handbook do not establish mandatory servicing duties for lenders, the Bank concludes, a lender's failure to comply with those provisions does not create a remedy or defense on behalf of the borrower.

In our view, neither of these distinctions serves to bar the extension of the *Fleet* holding to an appeal from a summary judgment involving a VA-insured rather than an FHA-insured loan. This Court's holding in *Fleet* was not based upon the allegedly mandatory nature of the language of the FHA Handbook and regulations, but upon the fact that the guidelines in the Handbook were " 'sensible, equitable standards of conduct, consistent with, and issued in furtherance of, the national housing goals.' " 366 Pa.Super. at 124, 530 A.2d at 923 (quoting *Brown II*, 392 F.Supp. at 563). Therefore, the allegedly less mandatory language of the VA Lenders Handbook does not require a different result in the case before us.

As to the second distinction proffered by the Bank, we note that a motion for summary judgment should be granted only in the clearest of cases, *Kotwasinski v. Rasner*, 436 Pa. 32, 41, 258 A.2d 865, 869 (1969). Therefore, we decline to say that because VA borrowers are afforded one set of protections by the Homeowner's Emergency Assistance Act, they are not also entitled to whatever additional protection, if any, may be afforded by the provisions of the VA Lenders Handbook. Appellant has not asserted that the Bank has failed to comply with the mandates of the Homeowner's Emergency Assistance Act, and that fact should be taken into account by the trial court in determining whether

equity would require the Bank to follow the servicing provisions set forth in the VA Lenders Handbook before foreclosing upon appellant's mortgage.

In evaluating the arguments raised by the Bank, we have considered the case law cited in support of those arguments. The cited cases do not, however, persuade us to adopt the Bank's position. In *U.S. v. Harvey*, 659 F.2d 62 (5th Cir.1981), the Fifth Circuit Court of Appeals held that the servicing provisions of the VA loan servicing manual [2] did not create a right in the mortgagor that can be enforced in defense to a foreclosure action or in an action to enjoin foreclosure. That the Court's holding was limited to the availability of a *legal* remedy, however, is apparent from the Court's recognition that appellants had raised the VA's noncompliance with the manual as an equitable defense and that this "unclean hands" argument was without merit, inasmuch as the VA had in fact properly serviced the loans in the manner contemplated by the manual. *Id.* at 64 n. 4 & 66 n. 8.

In *Rank v. Nimmo*, 677 F.2d 692 (9th Cir.1982), *cert. denied*, 459 U.S. 907, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982), which involved an action to set aside a foreclosure that had already occurred, the Ninth Circuit Court of Appeals, considering the same VA Lenders Handbook that is at issue in the present case, held that the Handbook had not been intended to have the force and effect of law and therefore did not create a legally enforceable duty on the part of the VA to take all reasonable measures to avoid foreclosure. *Id.* at 698. The Court, which was not presented with the issue raised herein, emphasized that mortgage foreclosure has traditionally been the province of state courts and state law. *Id.* at 697.

*Fitzgerald v. Cleland*, 498 F.Supp. 341 (D.Me.1980), *vacated on other grounds*, 650 F.2d 360 (1st Cir.1981), and *Gatter v. Cleland*, 512 F.Supp. 207 (E.D.Pa.1981), cited by the Bank for the holding that the Lenders Manual is a

**2.** This manual is apparently similar but not identical to the one at issue in the present case.

non-enforceable policy pronouncement, do not address the equitable claim that is involved in this appeal. Finally, this Court's decision in *Federal National Mortgage Association v. Greene*, 231 Pa.Super. 760, 331 A.2d 513 (1974), *alloc. denied*, cited by the Bank for the proposition that the VA regulations and Handbook do not require forbearance but are merely evidence of a non-binding policy of the Veterans Administration, does not state such a holding, but is instead simply a per curiam affirmance of a judgment.

In support of its argument, the Bank also cites the following provision of 38 C.F.R. § 36.4315, which concerns the acceptance of partial payments remitted by a defaulting borrower:

(b)(3) A failure by the [mortgage] holder to comply with the provisions of this paragraph may result in a partial or total loss of guaranty or insurance pursuant to § 36.4325(b), but such failure shall not constitute a defense to any legal action to terminate the loan.

38 C.F.R. § 36.4315(b)(3). This very specific provision of the Code of Federal Regulations does not resolve the issue raised in this appeal, namely, whether the Bank's failure to comply with the servicing provisions of the Lenders Handbook can be raised as an equitable defense.

■ As noted earlier, our sole task in this appeal is to determine whether there is an issue of fact to be tried. Appellant's affidavit recounts the Bank's failure to follow through on the contacts initiated by appellant in an effort to find a solution to his repayment problems.[3] Appellant contends that the Bank, by its inaction, failed to comply with the servicing provisions of the VA Lenders Handbook and is therefore barred on equitable grounds from foreclosing on his mortgage. On the facts of this case, and for the reasons set forth herein, we hold that appellant may raise the Bank's failure to comply with the servicing provi-

**3.** The only affidavit filed by the Bank is that of Charles W. Utley, Vice President of the Bank, who avers that "[a]t no time since December 1, 1987 have the mortgagors tendered money sufficient to satisfy all arrearages and reinstate their account to a current status."

sions of the VA Lenders Handbook as an equitable defense in the Bank's mortgage foreclosure action. Whether the Bank properly serviced appellant's mortgage therefore remains as a genuine issue of material fact which renders improper the award of summary judgment by the trial court. In evaluating the adequacy of the Bank's actions, the significance to be given to the servicing provisions of the VA Lenders Handbook, in light of the protections afforded VA borrowers under state law and the Bank's undisputed compliance with state law, is for the trial court to determine. We do not hold that the claim raised by appellant constitutes an *effective* equitable defense, but only that appellant must be allowed to raise the claim as an equitable defense. With that understanding, we reverse the summary judgment and remand the case to the trial court for further proceedings consistent with this opinion.

Summary judgment reversed. Case remanded to the trial court for further proceedings consistent with this opinion. Jurisdiction relinquished.